CARNES, Chief Judge:
James Hitchcock, a Florida inmate sentenced to death for the strangulation murder of a thirteen-year-old girl, appeals the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He contends that his Eighth and Fourteenth Amendment rights were violated at his latest resentencing proceeding when the state trial court refused to admit and consider, as relevant mitigating evidence, the prosecution’s offer to recommend a life sentence in exchange for a guilty plea to first-degree murder, an offer that Hitchcock rejected. He also contends that counsel at the resentencing hearing was ineffective for failing to elicit testimony from the defense’s mental health expert about the applicability of two statutory mitigating factors and for failing to seek a neuropsychological evaluation for the presence of possible brain damage.
I.
The lengthy and complicated history of this case dates back thirty-seven years. In the summer of 1976, Hitchcock raped his brother’s thirteen-year-old stepdaughter and then strangled her to death after she threatened to report the sexual assault. He was indicted on a single count of first-degree murder and, after rejecting the prosecution’s offer to recommend a life sentence in exchange for a guilty plea, was convicted at trial and sentenced to death. The Florida Supreme Court affirmed his conviction and capital sentence on direct appeal, see Hitchcock v. State, 413 So.2d 741 (Fla.1982), and the state courts rejected his initial attempts to obtain post-conviction relief, see Hitchcock v. State, 432 So.2d 42 (Fla.1983).
In May of 1983, Hitchcock filed a federal habeas petition under § 2254, which the district court denied and that denial was affirmed on appeal. See Hitchcock v. Wainwright, 770 F.2d 1514 (11th Cir.1985) (en banc). The Supreme Court, however, granted his petition for a writ of certiorari and vacated his death sentence because the penalty phase jury was instructed not to consider, and the sentencing judge refused to consider, evidence of non-statutory mitigating circumstances. See Hitchcock v. Dugger, 481 U.S. 393, 399, 107 S.Ct. 1821, 1824, 95 L.Ed.2d 347 (1987). Following his first resentencing proceeding, which again resulted in a sentence of death, Hitchcock challenged the state trial court’s refusal to admit the prosecution’s plea offer as relevant mitigating evidence at sentencing. The Florida Supreme Court rejected that challenge on appeal, concluding that the offer was not relevant mitigating evidence under the constitutional rule announced in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), because it had no bearing on Hitchcock’s character, record, or the circumstances of his crime. Hitchcock v. State, 578 So.2d 685, 689-91 (Fla.1990), vacated on other grounds by Hitchcock v. Florida, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).
Hitchcock nevertheless managed to obtain two more penalty phase proceedings, each in its turn resulting in death sentences. After the third death sentence was vacated, see Hitchcock v. State, 673 So.2d 859, 860 (Fla.1996), the fourth and (so far) last sentencing hearing was con *479 ducted in September 1996. At that sentencing hearing, the defense called Dr. Jethro Toomer, a clinical and forensic psychologist, who testified that Hitchcock suffered from borderline personality disorder resulting in lifelong “personality difficulties,” which would have affected him at the time of the murder by causing him to act impulsively. Dr. Toomer did not, however, diagnose Hitchcock with any major psychiatric disorder, nor was he specifically asked by defense counsel about the presence of two statutory mitigating circumstances — whether the crime was committed while Hitchcock was under the influence of extreme mental or emotional disturbance, and whether his capacity to appreciate the criminality of his conduct or conform his conduct to the law was substantially impaired. See Fla. Stat. § 921.141(6)(b), (f) (1996). Defense counsel did argue during closing arguments that Hitchcock was under the influence of extreme mental or emotional disturbance at the time of the offense.
In the 1996 resentencing proceeding, the jury recommended the death penalty by a vote of ten to two and the trial court followed that recommendation, finding that the aggravating circumstances of Hitchcock’s crime outweighed the mitigating ones. The court found four statutory aggravating circumstances: (1) the crime was committed while Hitchcock was under a sentence of imprisonment; (2) he committed the crime while engaged in the felony of sexual battery; (3) the crime was committed for the purpose of avoiding arrest; and (4) the crime was especially heinous, atrocious, or cruel. The trial court found only one statutory mitigating circumstance, that Hitchcock was 20 years old at the time of the murder, and several non-statutory mitigating circumstances, which it gave comparatively little weight. The non-statutory mitigating circumstances found by the trial court included that Hitchcock was under the influence of lifelong personality difficulties at the time of the offense, that he suffered from borderline personality disorder, and that the offense resulted from an unplanned, impulsive act. The Florida Supreme Court affirmed the death sentence on appeal and, in doing so, again rejected Hitchcock’s contention that the sentencing judge erred in excluding evidence of the prosecution’s rejected plea offer. See Hitchcock v. State, 755 So.2d 638, 645 (Fla.2000). The court explained that the claim was barred because it had been considered and rejected on the merits during Hitchcock’s appeal from his first resentencing proceeding. Id.
In 2001 Hitchcock filed a state motion for post-conviction relief from his latest death sentence, contending, among other things, that counsel at his sentencing proceeding was ineffective for failing to (1) specifically elicit testimony from Dr. Toomer about the presence of the two statutory mental health mitigators and (2) have him evaluated by a neuropsychologist for indications of organic brain damage. After holding an evidentiary hearing, which was marked by conflicting expert testimony about the presence, extent, and influence of possible brain damage, the state trial court rejected the claims of ineffective assistance of counsel on the merits.
The Florida Supreme Court affirmed the denial of post-conviction relief, concluding that Hitchcock was not prejudiced by his counsel’s failure to ask Dr. Toomer for his ultimate opinion about the applicability of the statutory mental health miti-gators in light of “the extensive mitigation that was presented” at resentencing, including Dr. Toomer’s testimony that Hitchcock was experiencing the effects of borderline personality disorder at the time of the offense, and “the extremely weighty *480 aggravators proven in this case.” Hitchcock v. State, 991 So.2d 337, 356-58 (Fla.2008). The Florida Supreme Court further found that counsel’s failure to seek a neuropsychological evaluation was neither deficient nor prejudicial given the “conflicting expert testimony presented” during the post-conviction hearing, the speculative nature of Hitchcock’s contention that he suffered from brain damage at the time of the murder, and the “extremely weighty” aggravating factors in the case. Id. at 360. The court also noted that several mental health experts had testified about “Hitchcock’s normal intelligence, lack of mental illness, and positive adaptation to prison life.” Id. at 360-61.
Hitchcock filed his current federal habe-as petition in October 2008, reiterating his claims challenging his 1996 death sentence. The district court denied the § 2254 petition but granted Hitchcock a certificate of appealability (COA) on his claim that evidence of the prosecution’s plea offer was improperly excluded during his last resen-tencing proceeding. We later expanded the COA to include Hitchcock’s two claims of ineffective assistance of resentencing counsel.
II.
We review de novo the denial of a federal habeas petition. Jamerson v. Sec’y for Dep’t of Corr., 410 F.3d 682, 687 (11th Cir.2005). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may not grant habeas relief on a claim adjudicated on the merits in state court unless the state court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.” 28 U.S.C. § 2254(d)(1). The phrase “clearly established Federal law” refers only to the legal principles embodied in the holdings of the United States Supreme Court. See Thaler v. Haynes, 559 U.S. 43, 47, 130 S.Ct. 1171, 1173, 175 L.Ed.2d 1003 (2010); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir.2001). And a state court’s application of clearly established federal law cannot be deemed unreasonable unless “no ‘fairminded jurist’ could agree” with the state court’s conclusion. Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257 (11th Cir.2012) (quoting Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)).
A.
Hitchcock contends that he was deprived of his constitutional right to present relevant mitigating evidence at his 1996 resentencing when the state trial court excluded from evidence and refused to consider the State’s pretrial offer to recommend a life sentence in return for a guilty plea. Hitchcock insists that the plea offer, which he rejected, is relevant because it shows that the prosecution believed that a death sentence was not warranted in his case.
The Supreme Court has held that “the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital cases, not be precluded from considering, as a mitigating factor, any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” Lockett, 438 U.S. at 604, 98 S.Ct. at 2964-65 (plurality opinion); see also Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982) (adopting the rule announced by the plurality in Lock-ett ). The Court has emphasized, however, that this rule does not “limit[ ] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant’s character, prior record, or the *481 circumstances of his offense.” Lockett, 438 U.S. at 604 n. 12, 98 S.Ct. at 2965 n. 12.
This constitutional rule, and its associated limitation, reflects “the principle that punishment should be directly related to the personal culpability of the criminal defendant.” Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). While the circumstances of a defendant’s crime are related to his culpability, his “background and character [are also] relevant because of the belief, long held by society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.” Id. (quotation marks omitted). As framed by the Supreme Court, the question of constitutional relevance turns on whether the proffered mitigating evidence has “any tendency to mitigate the defendant’s culpability” or might otherwise serve as a reasonable basis for imposing a sentence less than death. Tennard v. Dretke, 542 U.S. 274, 284-87, 124 S.Ct. 2562, 2570-71, 159 L.Ed.2d 384 (2004).
Although the mitigating circumstances standard is a broad one, it is not without boundaries. As Justice O’Connor pointed out in Franklin v. Lynaugh, “[n]othing in Lockett or Eddings requires that the sentencing authority be permitted to give effect to evidence beyond the extent to which it is relevant to the defendant’s character or background or the circumstances of the offense.” 487 U.S. 164, 185-86, 108 S.Ct. 2320, 2333, 101 L.Ed.2d 155 (1988) (O’Connor, J., concurring in the judgment). The decision in Franklin underscores that point. It held that the Constitution “in no way mandates reconsideration by capital juries, in the sentencing phase, of their residual doubts over a defendant’s guilt,” because “[s]uch lingering doubts are not over any aspect of petitioner’s character, record, or a circumstance of the offense.” Id. at 174, 108 S.Ct. at 2327 (plurality opinion) (quotation marks omitted). Likewise, a plea offer from the prosecutor is not evidence about “any aspect of petitioner’s character, record, or a circumstance of the offense.” Id.
The Sixth Circuit’s recent en banc decision in United States v. Gabrion provides a helpful analogy. See 719 F.3d 511 (6th Cir.2013) (en banc). In that case the capital murder was committed inside the State of Michigan, which has no death penalty, but it was also committed 227 feet inside a National Forest, which subjected the defendant to the territorial jurisdiction of the United States and the federal death penalty. Id. at 515-18. The Sixth Circuit rejected the contention that the location of the murder was a mitigating circumstance, either because Gabrion committed it in a state that has no death penalty or because if he had committed it 228 feet away from where he did he would not have faced a death sentence. Id. at 520-24. The Court pointed out that the focus of the mitigating circumstances standard on the defendant’s character, background, and the circumstances of his offense, particularly as they relate to the question of culpability, is reflected in the types of evidence that the Supreme Court has held to be mitigating: evidence of a defendant’s youth, abusive upbringing, and emotional disturbance, see Eddings, 455 U.S. at 115, 102 S.Ct. at 877; evidence of a defendant’s low IQ or impaired intellectual functioning, see Tennard, 542 U.S. at 287-88, 124 S.Ct. at 2571-72; evidence of a defendant’s post-crime rehabilitation or good behavior in prison, see Skipper v. South Carolina, 476 U.S. 1, 4-5, 106 S.Ct. 1669, 1670-71, 90 L.Ed.2d 1 (1986); evidence of a defen *482 dant’s military service and hardships suffered during it, see Porter v. McCollum, 558 U.S. 30, 39-40, 130 S.Ct. 447, 453, 175 L.Ed.2d 398 (2009); evidence of a defendant’s religious conversion while in prison, see Wong v. Belmontes, 558 U.S. 15, 21, 130 S.Ct. 383, 387, 175 L.Ed.2d 328 (2009); evidence that a defendant was intoxicated at the time of the crime, see Parker v. Dugger, 498 U.S. 308, 314, 111 S.Ct. 731, 736, 112 L.Ed.2d 812 (1991); and evidence that the defendant played a minor role in the offense, see Enmund v. Florida, 458 U.S. 782, 797-98, 102 S.Ct. 3368, 3376-77, 73 L.Ed.2d 1140 (1982). See Gabrion, 719 F.3d at 521. The facts those types of evidence show are relevant mitigating circumstances because they allow a sentencing judge or jury to express “a reasoned moral response to the defendant’s background, character, and crime” in deciding whether to impose the ultimate punishment of death. See Penry, 492 U.S. at 319, 109 S.Ct. at 2947 (quotation marks omitted).
By contrast, the Supreme Court has held that a defendant has no constitutional right to present evidence of his innocence at sentencing because it sheds no light on his character, record, or the “manner in which he committed the crime for which he has been convicted.” Oregon v. Guzek, 546 U.S. 517, 523, 126 S.Ct. 1226, 1230-31, 163 L.Ed.2d 1112 (2006). For similar reasons, some of our sister circuits have held that evidence of the impact that a defendant’s execution will have on his family or friends, as well as evidence about his family’s love for him, is not mitigating circumstance evidence because it does not reflect on the defendant’s background or character or the circumstances of the crime. See United States v. Hager, 721 F.3d 167, 194-97 (4th Cir.2013); United States v. Snarr, 704 F.3d 368, 401-02 (5th Cir.2013); Stenson v. Lambert, 504 F.3d 873, 891-92 (9th Cir.2007); Coleman v. Saffle, 869 F.2d 1377, 1393 (10th Cir.1989).
The fact that Hitchcock would not have received a death sentence if only he had accepted the plea offer has as little or nothing to do with his character, record, or the circumstances of the offense, and is as devoid of any moral significance as the fact that Gabrion would not have faced a death sentence if only he had murdered the victim in a different location. Just as “mitigation under the Eighth Amendment is not a matter of geographic coordinates,” Gabrion, 719 F.3d at 522, neither is it a matter of a particular prosecutor’s willingness to bargain.
The Supreme Court has never held that a prosecutor’s offer to take the death penalty off the table in return for a guilty plea is a mitigating circumstance. And all but one of the courts to have decided the issue have held that failed plea negotiations and rejected plea offers are not mitigating circumstances because they have no bearing on a defendant’s character or record or the circumstances of the offense. See Owens v. Guido, 549 F.3d 399, 419-20 (6th Cir.2008) (holding that evidence of failed plea negotiations is not relevant to mitigation because it has no bearing on the defendant’s character, record, or the circumstances of his offense); Bennett v. State, 933 So.2d 930, 953 (Miss.2006) (holding that a capital defendant was not entitled to present evidence of a plea offer for a life sentence because it was “neither mitigation evidence of his character nor part of the circumstances of the crime for which [he] was convicted”); Howard v. State, 367 Ark. 18, 238 S.W.3d 24, 47 (2006) (same); Neal v. Commonwealth, 95 S.W.3d 843, 852-53 (Ky.2003) (holding that a plea offer does not constitute relevant mitigating evidence because it “is not an aspect of the character of the defendant, nor is it a circumstance of the offense, or a mitigat *483 ing aspect of the record of the defendant”); Wisehart v. State, 698 N.E.2d 28, 64 (Ind.1998) (same); Wiggins v. State, 324 Md. 551, 597 A.2d 1359, 1370 (1991) (same), reversed on other grounds by Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Ross v. State, 717 P.2d 117, 122 (Okla.Cr.App.1986) (holding that a capital defendant had no right to present, as mitigating circumstance evidence, a negotiated plea agreement that was later withdrawn). But see Scott v. Schriro, 567 F.3d 573, 584 (9th Cir.2009) (“The plea offer’s mitigatory effect is clear: the prosecution thought this was not a clear-cut death penalty case.”).
We agree with the seven courts (we make it eight) on the majority side of this issue and not with the Ninth Circuit, which is a minority of one. Evidence of a rejected plea offer for a lesser sentence, like evidence of innocence or evidence of the geographical location of the crime, is not a mitigating circumstance because it sheds no light on a defendant’s character, background, or the circumstances of his crime. Such a plea offer does not by itself show that the prosecutor believed the defendant did not deserve the death penalty.[1] A plea offer of a non-capital sentence in a capital case may simply reflect a desire to conserve prosecutorial resources, to spare the victim’s family from a lengthy and emotionally draining trial, to spare them the possibility of protracted appeal and post-conviction proceedings (spanning in this case more than three decades), or to avoid any possibility, however slight, of an acquittal at trial.
Even if one could somehow infer from a plea offer that a particular prosecutor’s personal views were that the defendant did not deserve a death sentence as much as other murderers did, or even at all, that personal belief would not be admissible or relevant evidence. We have held that it is misconduct for a prosecutor to tell the jury that he personally believes the defendant deserves a death sentence. See Brooks v. Kemp, 762 F.2d 1383, 1410 (11th Cir.1985) (en banc) (holding it improper to even imply “to the jury that the prosecutor’s office had already made the careful judgment that this case, above most other murder cases, warranted the death penalty”), vacated on other grounds, 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), reinstated, 809 F.2d 700 (11th Cir.1987) (en banc); Tucker v. Kemp, 762 F.2d 1496, 1505 (11th Cir.1985) (en banc) (holding that a prosecutor’s “statement [to the capital sentencing jury], invoMng the expertise of the prosecutor to suggest the special seriousness of the crime, was improper”); *484 see also Drake v. Kemp, 762 F.2d 1449, 1459-60 (11th Cir.1985) (“An attorney’s personal opinion is irrelevant to the task of a sentencing jury.”). By the same token, a single prosecutor’s personal belief that the defendant may not deserve the death penalty as much as some other murderers, or at all, should not be put before the jury. It is just as irrelevant as a prosecutor’s personal opinion running the other way.
To the extent Hitchcock’s argument is that his rejection of the plea offer is relevant to the question of whether he is innocent of the crime because it shows that he was willing to face death rather than admit guilt, the Supreme Court has expressly rejected the notion that evidence of a defendant’s innocence, or of residual doubt about his guilt, is constitutionally relevant at sentencing. See Guzek, 546 U.S. at 523, 126 S.Ct. at 1230-31; Franklin, 487 U.S. at 174, 108 S.Ct. at 2327 (plurality opinion).
For what it is worth, we also note that a constitutional rule requiring the admission of rejected plea offers as mitigating evidence in capital cases could have the pernicious effect of discouraging prosecutors from extending plea offers in the first place, lest those offers come back to haunt them at sentencing. See Wright v. Bell, 619 F.3d 586, 600 (6th Cir.2010) (“Allowing a defendant to use plea negotiations in mitigation would clearly discourage plea negotiations in capital cases as prosecutors would correctly fear that during the second stage proceedings, they would be arguing against themselves.”) (quotation omitted). That would be in no one’s best interest.[2]
For these reasons, we hold that the Constitution does not mandate the admission of rejected plea offers as relevant mitigating evidence at sentencing. As a result, whether the issue is reviewed de novo or under AEDPA’s deferential standards, Hitchcock is not entitled to federal habeas relief on his Eighth Amendment claim. This is the same type of dual holding that the Supreme Court reached in Knowles v. Mirzayance, 556 U.S. 111, 114, 129 S.Ct. 1411, 1415, 173 L.Ed.2d 251 (2009) (“Whether reviewed under the standard of review set forth in § 2254(d)(1) or de novo, [the petitioner] failed to establish, that his counsel’s performance was ineffective.”). See also Berghuis v. Thompkins, 560 U.S. 370, 390, 130 S.Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010) (“[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review.”); Reese v. Sec’y, Fla. Dep’t of Corr., 675 F.3d 1277, 1291 (11th Cir.2012) (explaining that, even when it is clear that AEDPA deference applies, we may affirm the denial of federal habeas relief based solely on de novo review); Allen v. Sec’y, Fla. Dep’t of Corr., 611 F.3d 740, 753 (11th Cir.2010) (‘(Alternatively, even if no deference were due the state collateral trial court’s decision on the performance element, we would conclude on de novo review that [the petitioner] had failed to establish it.”). These are our two alternative holdings on this issue.[3]
*485 B.
Hitchcock also contends that his lawyer during his latest resentencing proceeding was ineffective for failing to elicit testimony from defense expert Dr. Toomer about the applicability of the two statutory mental health mitigating factors, and for failing to seek a neuropsychological evaluation and present evidence of possible brain damage. A petitioner asserting a claim of ineffective assistance of counsel must demonstrate both deficient performance and prejudice — that counsel’s performance “fell below an objective standard of reasonableness” and that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). Where, as here, a defendant challenges a death sentence, the prejudice inquiry asks “whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.” Id. at 695, 104 S.Ct. at 2069.
The Florida Supreme Court held that, even assuming deficient performance in counsel’s failure to specifically ask Dr. Toomer whether either of the two statutory mental health mitigators applied, Hitchcock was not prejudiced “in fight of the extensive mitigation that was presented [at resentencing] and the extremely weighty aggravators proven in this case.” Hitchcock, 991 So.2d at 356-58. That conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1). Counsel did have Dr. Toomer testify at the resen-tencing hearing that Hitchcock suffered *486 from borderline personality disorder and that it would have affected him at the time of the crime by causing him to act impulsively. Based on Dr. Toomer’s testimony, defense counsel argued in closing that Hitchcock was under the influence of extreme mental or emotional disturbance at the time of the offense, one of the statutory mitigating circumstances. The trial court found as non-statutory mitigating circumstances that Hitchcock was under the influence of lifelong personality difficulties at the time of the murder and that the murder was the result of an unplanned, impulsive act. There were four statutory aggravating circumstances, and Hitchcock was convicted of raping and murdering his brother’s thirteen-year-old stepdaughter. Given those facts and circumstances, it was not unreasonable for the Florida Supreme Court to conclude there is no reasonable probability of a different result had counsel asked Dr. Toomer to state his ultimate opinion about whether the two statutory mitigating circumstances fit. We cannot say that no fairminded jurist could agree with that conclusion. See Holsey, 694 F.3d at 1257.
As to the second of Hitchcock’s ineffective assistance claims, the Florida Supreme Court found that he had failed to establish either deficient performance or prejudice in regard to counsel’s failure to have Hitchcock examined by a neuropsy-chologist for indications of brain damage. Hitchcock, 991 So.2d at 360. Because the Florida Supreme Court’s finding of no prejudice was not unreasonable, we need not address the question of deficient performance. See Windom v. Sec’y, Dep’t of Corr., 578 F.3d 1227, 1248 (11th Cir.2009) (“Because the failure to demonstrate either deficient performance or prejudice is dispositive ..., there is no reason for a court deciding an ineffective assistance claim to address both components of the inquiry if the defendant makes an insufficient showing on one.”) (quotation marks and ellipsis omitted). We agree with the Florida Supreme Court, as well as the district court, that Hitchcock’s evidence that he suffered from brain damage at the time of the murder was speculative at best and significantly undermined by the testimony that he was of normal intelligence, did not suffer from a major mental illness, and during the decades he had been in prison had not manifested behavior indicative of brain damage. Given the significant aggravating circumstances involved in his offense and found by the trial court, we cannot say that no fairminded jurist could agree with the Florida Supreme Court’s determination that there is no reasonable likelihood of a lesser sentence had counsel obtained and presented the available evidence of brain damage.
III.
For these reasons, we affirm the district court’s denial of Hitchcock’s § 2254 petition for a writ of habeas corpus.
AFFIRMED.

. The concurring opinion cautions against adopting a per se rule that prior plea negotiations are irrelevant for sentencing purposes for fear of "sending a signal to state courts that consideration of the evidence is prohibited.” We wholeheartedly agree that we have no authority to decree what evidence state courts may or may not consider at the sentencing phase of a capital trial. But, contrary to the concurrence’s suggestion, we neither hold nor imply that the Constitution forbids states from allowing defendants to introduce evidence of plea offers at sentencing. We hold only that the Constitution does not require states to do so.
The concurrence also proclaims that our holding "turns the traditional concepts of relevance and admissibility on their heads by assuming that if we have not deemed a specific type of evidence relevant and admissible, it is not.” Our conclusion that the Eighth Amendment does not mandate the admission and consideration of rejected plea offers as relevant mitigating circumstances is not based on the fact that neither we nor the Supreme Court has ever deemed them relevant and admissible. It is based on the fact that rejected plea offers have no bearing on a defendant’s character, background, or the circumstances of the offense, which means that the Constitution does not compel their admission at sentencing.

. We are not, as the concurrence implies, deciding the question of constitutional relevance based on the potentially adverse consequences of permitting evidence of rejected plea offers in the penalty phase of a capital trial. Instead, having concluded that rejected plea offers are not constitutionally relevant under the standards crafted by the Supreme Court,-we are simply noting (as we say “For what it is worth ...”) that the admission of rejected plea offers could discourage prosecutors from extending plea offers in the first place.

. The concurring opinion insists that our holding on the merits of this issue is dicta insofar as it goes beyond the question of what the result should be applying AEDPA deference. That opinion's theory, with which we *485 disagree, is that because we reach the same result with deference that we have reached without deference, one of our conclusions should not count, and the one that should not count is the one the author of the concurring opinion prefers not to count. But those who disagree with a majority opinion's alternative holdings do not get to pick the one that counts. It could be said with as much logical force that if one of our two conclusions on this issue is dicta, it is the one that deference applies and the result to be reached when deference is applied. The concurring opinion fails to explain why under its theory of necessity our decision on the merits without deference does not, instead, make the fallback holding on the result applying AEDPA deference unnecessary and therefore dicta. The concurring opinion is wrong for another reason. It ignores well-established law that an alternative holding is not dicta but instead is binding precedent. See, e.g., Massachusetts v. United States, 333 U.S. 611, 623, 68 S.Ct. 747, 754, 92 L.Ed. 968 (1948) (explaining that where a case has "been decided on either of two independent grounds” and "rested as much upon the one determination as the other,” the "adjudication is effective for both”); Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 340, 48 S.Ct. 194, 196, 72 L.Ed. 303 (1928) (“It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion.”); United States v. Title Ins. & Trust Co., 265 U.S. 472, 486, 44 S.Ct. 621, 623, 68 L.Ed. 1110 (1924) ("[Wjhere there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, the ruling on neither is obiter, but each is the judgment of the court, and of equal validity with the other.”) (quotation marks omitted); Bravo v. United States, 532 F.3d 1154, 1162 (11th Cir.2008) (explaining that an "alternative holding counts because in this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings”); Johnson v. DeSoto Cnty. Bd. of Comm'rs, 72 F.3d 1556, 1562 (11th Cir.1996) ("[Wje are bound by alternative holdings.”); McLellan v. Miss. Power & Light Co., 545 F.2d 919, 925 n. 21 (5th Cir.1977) (en banc) ("It has long been settled that all alternative rationales for a given result have precedential value.”). The concurring opinion flies in the face of all of that precedent.