[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13706

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOSHUA HERRERA,
a.k.a. Joshua Reuben Herrera,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cr-00079-SDG-RDC-1

_____

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

A jury convicted Joshua Herrera of one count of attempting to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  As part of his defense, Herrera tried to introduce expert testimony from a psychologist that he was not sexually attracted to children.  The district court ruled that testimony inadmissible in part under Federal Rule of Evidence 704(b).  That rule prohibits experts in a criminal trial from opining on whether the defendant had the required mental state to be convicted as charged.  FED. R. EVID. 704(b).

Herrera now appeals his conviction, arguing the district court abused its discretion by restricting the testimony.  But in *United States v. Gillis*, we held that a district court did not abuse its discretion when it barred nearly identical testimony under the same rule.  938 F.3d 1181, 1195 (11th Cir. 2019).  So we affirm Herrera's conviction.

## I.    BACKGROUND

### A.  Herrera's Conduct

In November 2019, as part of an undercover operation against child sex crimes, the Federal Bureau of Investigation ("FBI") created an ad on FetLife.com.  FetLife.com is a website that hosts classified ads for people looking to act on sexual fetishes.  Posting under the username "daughterlover_11," an agent posed as a "Mom . . . looking for like minded no limits perv."  Two days after

23-13706                Opinion of the Court                3

posting, an account, later identified as belonging to Herrera, responded.

In their initial exchange, the undercover agent explained that she was "looking for something taboo with [her] daughter" and asked if Herrera had "any age limits?" Herrera responded, "Not particularly. What is it? . . . what's the thing you want to do?"

Over the next three months, the agent and Herrera exchanged about 400 messages. In these messages, the agent said her daughter was eleven years old and sent a photograph of a young girl lying on a bed. The pair discussed how Herrera would teach the girl how to have sex, including oral and penetrative sex, which he would engage in with her with and without a condom. Herrera also assured the agent that he had "papers" showing he was free of sexually transmitted diseases. At no point did he contact the police or report the initial ad or these messages.

The pair arranged for Herrera to meet the "daughter" at a Waffle House in Duluth, Georgia. Then, on the planned day, Herrera drove about fifty miles from Athens, Georgia, to the restaurant. In the parking lot, law enforcement arrested Herrera and seized his cell phone.

In Herrera's phone, law enforcement discovered the messages with the agent. They also found thirty images of child erotica and suspected child pornography, as well as a document containing test results for sexually transmitted diseases. Law enforcement did not find a condom on Herrera or in his car.

### B. *Criminal Proceedings*

A grand jury in the Northern District of Georgia charged Herrera with one count of violating 18 U.S.C. § 2422(b). That provision, as relevant here, provides criminal penalties for "[w]hoever, using . . . means of interstate . . . commerce," "attempts to" "*knowingly* . . . entice[]" anyone under eighteen "to engage in" child molestation. 18 U.S.C. § 2422(b) (emphasis added); GA. CODE ANN. § 16-6-4.

Herrera proceeded to trial. At trial, Herrera testified that he traveled to Athens because he "thought there was a child in danger." He admitted messaging with the FBI agent but claimed he was attempting to gather information and arrange a meeting to rescue the child. He also said he didn't know how the child erotica and suspected child pornography was on his phone.

Herrera's former girlfriend, Raina Cundiff, also testified in his defense. She spoke about their relationship and her observations about Herrera's use of pornography. She also testified that, in her lay opinion, she observed that Herrera exhibited what she believed to be characteristics of autism. At one point, Herrera's attorney asked Cundiff, "Before you had sex, was there anything about your appearance or the way that you had groomed yourself that you mentioned to him?" But the government objected. Herrera's counsel responded that the question was "directly related to [Herrera's] interest in children or whether he has it or not." Without explaining its ruling, the district court sustained the government's objection.

23-13706                Opinion of the Court                    5

Finally, Herrera called Dr. Tyler Whitney, a licensed clinical psychologist.  Before trial, Herrera disclosed that Dr. Whitney, an expert witness, would testify that Herrera has autism spectrum disorder ("ASD"), and that could explain his behavior here.  The district court summarized Herrera's representations about the scope of Dr. Whitney's expected testimony as follows:

> Herrera has ASD, including an explanation of the methodology used to reach this diagnosis.

> Herrera did not receive a formal ASD diagnosis as a child, including the reason for the delayed diagnosis.

> Herrera exhibits certain traits that are common in individuals with ASD.

> Herrera's behavior in this case *could* be consistent with the inability of many autistic persons to imagine how others might view certain behavior.

> Herrera's behavior, though it may appear unusual to non-autistic persons, could be consistent with Herrera's statement that he was trying to save the "daughter."

6                    Opinion of the Court                    23-13706

>Herrera's psychosexual assessment showed no indications that he has a sexual interest in children of either gender.

The government objected to Dr. Whitney's testimony. In the government's view, the proposed testimony violated the Insanity Defense Reform Act and Federal Rules of Evidence 401, 402, 403, and 704(b). The district court largely disagreed. It ruled that Dr. Whitney could testify, except that it excluded Dr. Whitney's opinion that Herrera's "psychosexual assessment showed no indications that he has a sexual interest in children."

In reaching this conclusion that this limited testimony would violate Rule 704(b), the district court relied on our opinion in *United States v. Gillis*, 938 F.3d at 1195. Rule 704(b) prohibits expert witnesses in criminal cases from opining on whether a defendant had the required mental state to be convicted of the charged crime. FED R. EVID. 704(b).

The district court also excluded the same testimony under Rule 403. As the district court saw things, Dr. Whitney's opinion that Herrera's "psychosexual assessment showed no indications that he has a sexual interest in children" had little probative value, and what it had was substantially outweighed by its potential prejudicial effect. Dr. Whitney ultimately testified as Herrera proposed but not to the precluded opinion.

At the end of the trial, the jury convicted Herrera as charged. The district court sentenced him to 235 months in prison.

Herrera now appeals.

## II.    STANDARD OF REVIEW

We review a district court's decision not to admit expert testimony for abuse of discretion. *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004). And we will "not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous." *Id.* (internal quotation marks and citation omitted). So "we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* at 1259.

As for a constitutional challenge to the exclusion of evidence, we review that de novo. *United States v. Litsky*, 18 F.4th 1296, 1302 n.2 (11th Cir. 2021) (quoting *United States v. Sarras*, 575 F.3d 1191, 1209 n.24 (11th Cir. 2009)).

## III.    DISCUSSION

Herrera argues that the district court abused its discretion by wrongfully applying Federal Rules of Evidence 704(b) and 403 to exclude Dr. Whitney's testimony about his psychosexual assessment of Herrera. He also asserts that the district court abused its discretion by restricting Cundiff's testimony. And together, Herrera urges, these two errors violated his constitutional right to present his preferred defense.

We begin there. Under the Constitution, a criminal defendant has "the implicit right to present evidence in their favor." *Gillis*, 938 F.3d at 1193; *see also* U.S. CONST. amends. V, VI. To evaluate whether the district court violated this right, "we examine (1)

whether the right was actually violated, and (2) if so, whether that error was harmless beyond a reasonable doubt." *Gillis*, 938 F.3d at 1193.

But the Federal Rules of Evidence also figure into this analysis. The Federal Rules of Evidence govern what evidence can be admitted at trial in federal courts. After all, the right to present a criminal defense does not include "an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). So the Federal Rules of Evidence "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Still, "particular applications of a generally valid rule may unconstitutionally deny a defendant his rights . . . ." *Gillis*, 938 F.3d at 1193 (quoting *United States v. Hurn*, 368 F.3d 1359, 1363 n.2 (11th Cir. 2004)). But if a district court correctly excludes evidence under the evidentiary rules, to succeed on a constitutional challenge, a defendant must show "a compelling reason for making an exception" to the rules. *Id*. at 1195.

Herrera does not argue that any of the Federal Rules of Evidence are "arbitrary" or "disproportionate," and thus invalid. Instead, he contends only that the district court misapplied the Federal Rules of Evidence when it limited Dr. Whitney's and Cundiff's testimony. Herrera also does not contend that a compelling reason

supports making an exception to the Federal Rules for his case. So his constitutional challenge depends on whether the district court wrongly applied the rules.

But even there, Herrera concedes that any error in excluding Cundiff's testimony would not alone warrant the vacatur of his conviction. So his constitutional challenge hinges on whether the district court properly excluded Dr. Whitney's testimony that Herrera's "psychosexual assessment showed no indications that [Herrera] has a sexual interest in children."

For the reasons we explain below, we conclude that the district court did not abuse its discretion when it limited Dr. Whitney's testimony under Rule 704(b). And as a result, it did not violate Herrera's constitutional right to present his preferred defense. So we do not decide whether the district court also properly applied Rule 403. Nor do we decide whether the district court abused its discretion in restricting Cundiff's testimony because Herrera concedes that any error in that ruling would not alone be enough to vacate Herrera's conviction.

Our discussion proceeds in two parts. First, we explain the scope of Rule 704(b). Then, we articulate why our prior-panel-precedent in *United States v. Gillis* requires us to affirm the district court's ruling. *See* 938 F.3d at 1195.

### A. The Scope of Rule 704(b)

Rule 704(b) provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element

of the crime charged or of a defense." To explain the rule's scope, we need to walk through how and why it was adopted.

Before the adoption of Rule 704, under the common law, witnesses at trial could not testify on "ultimate issues." *See Diaz v. United States*, 602 U.S. 526, 531–32 (2024). "Ultimate issues" are "issues that the jury must resolve to the decide the case." *Id.* at 531. In a murder case, for example, the prosecution must prove that the accused intentionally killed the victim. So ultimate issues include whether the accused was the person who killed the victim, whether the victim actually died, and whether the accused *intended* to kill the victim. *Cf. id.* at 531–32 (explaining the meaning and examples of ultimate issues). And a witness could not opine on any of them under the common law. The common law sought to "prevent[] witnesses from taking over the jury's role." *Id.* at 532.

But by the 1940s, the "ultimate-issue rule" fell out of favor. *Id.* at 533. Some critics pointed out that even if witnesses testified on ultimate issues, juries could still decide whether to believe them. *Id.* Others highlighted that the rule excluded valuable testimony. *Id.* So in 1975, Congress adopted Federal Rule of Evidence 704, which permitted all ultimate-issue testimony in federal courts. *Id.*

But nine years later, Congress walked that back. *Id.* In 1981, John Hinckley, Jr., attempted to assassinate President Ronald Reagan. *Id.* And at his trial, he argued he could not be convicted of murder because he was insane, so he could not have legally intended to kill President Reagan. *Id.* Expert witnesses for both the prosecution and defense testified about whether Hinckley was

insane. *Id.* Ultimately, the jury found Hinckley not guilty by reason of insanity. *Id.*

Congress thought that the expert witnesses in the Hinckley trial had too much influence over the jury. So it adopted Rule 704(b). That rule mandates that experts can't testify to the "ultimate issue" of whether a criminal defendant had the required mental state to commit the charged crime. *See id.* at 533–34. Under Rule 704(b), then, if the charged crime requires the defendant to have "knowingly," "willfully," "intentionally," or "recklessly" acted, for instance, an expert cannot offer his opinion on that subject.

Not surprisingly, given the origins of Rule 704(b), had the rule existed during Hinckley's trial, it would have barred the experts from opining on whether Hinckley could have established the necessary intent attempt to kill President Reagan. And today, in our hypothetical murder case, expert witnesses could provide their opinion about who killed the victim and whether the victim died but not whether the accused *intended* to kill the victim.

But Rule 704(b)'s exclusionary exception is "narrow." *Id.* at 534. It blocks only "expert opinions in a criminal case that are *about* a particular person ('the defendant') and a particular ultimate issue (whether the defendant has 'a mental state or condition' that is 'an element of the crime charged or of a defense')." *Id.* (emphasis added). It does not bar opinions that simply *relate* to the mental-state issue. *See id.* at 537.

So experts can still help the jury decide the mental-state issue by providing valuable relevant information. They just can't directly opine on the ultimate issue.

### B. Herrera's Case

Under 18 U.S.C. § 2422(b), to convict Herrera, the jury had to conclude he acted "knowingly" when he allegedly tried to entice a child to engage in sexual activity. So under Rule 704(b), as an expert, Dr. Whitney, could not testify on that subject. As a result, the question we must answer is whether the district court properly concluded that Dr. Whitney's opinion that Herrera's "psychosexual assessment showed no indications that [Herrera] has a sexual interest in children" would have been a direct opinion on that topic, or whether the testimony would have only *related* to that subject.

Our prior precedent answers that question. In another 18 U.S.C. § 2422(b) case, we held that a district court did not abuse its discretion when it excluded nearly identical expert testimony under Rule 704(b). In *United States v. Gillis*, Gillis, the defendant, was charged with violating 18 U.S.C. § 2422(b). 938 F.3d at 1190. He sought for his expert psychologist to testify to her opinions after "a psychosexual evaluation." *Id.* at 1192. Gillis proffered that she would testify about his "psychosexual makeup" and "sexual development" and that Gillis didn't "have an interest in prepubescent children." *Id.* The district court concluded that testimony would be "a thinly veiled attempt by the defense to offer an expert opinion that Gillis lacked the requisite intent for the enticement offense . . . ." *Id.* at 1195. So the court excluded it under Rule 704(b). *Id.*

Gillis brought a constitutional challenge to the exclusion of that testimony. *Id.* at 1193. Although he didn't argue that the district court improperly applied Rule 704(b), we needed to decide that question to assess the constitutional challenge. *Id.* We held that the district court did not abuse its discretion applying Rule 704(b). *See id.* at 1195. We said we saw "no clear error in the district court's determination that [the] proffered testimony would do more than 'leave[ an] inference for the jury to draw,' and instead veer[] into the impermissible territory of offering an opinion on [the defendant's] mental state." *Id.* (second bracket in original).

We are bound to follow *Gillis* when it applies. Under our prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc.*" *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

Herrera sought for Dr. Whitney to offer testimony indistinguishable from that of the expert in *Gillis*. Indeed, both Herrera and Gillis tried in 18 U.S.C. § 2422(b) cases to present their experts' opinions, based on psychosexual assessments, that they were not sexually attracted to children. *See Gillis*, 938 F.3d at 1192. To be sure, as Herrera notes, the proposed expert's report in *Gillis* wasn't part of the record on appeal, but Dr. Whitney's report is. *See id.* But Herrera identifies, and we see, nothing in that report that

14                    Opinion of the Court                    23-13706

suggests Dr. Whitney's testimony would be meaningfully different from that in *Gillis*.[1]

Because Herrera's case is not materially distinguishable from *Gillis*, we must follow *Gillis*. As a result, we must conclude that the district court did not abuse its discretion under Rule 704(b) in excluding Dr. Whitney's testimony that Herrera's "psychosexual assessment showed no indications that [Herrera] has a sexual interest in children."

Herrera tries to get out from under the prior-panel-precedent rule in four ways. None succeed.

First, Herrera notes that Gillis did not directly challenge the district court's application of Rule 704(b). Instead, Gillis argued that the application of the rule was unconstitutional. *See Gillis*, 938 F.3d at 1192–93. But we don't see how that allows us to depart from *Gillis*'s holding that expert testimony of a defendant's psychosexual assessment in a § 2422(b) case violates Rule 704(b).

Second, Herrera also contends that in *Gillis*, we upheld the district court's exclusion of the relevant testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Herrera is mistaken. We affirmed the

_____

[1] Herrera muses that the proposed testimony in *Gillis* may have been "far broader" than here, but he offers no basis for that speculation. And he notes the district court in *Gillis* expressed concern that the expert was overly reliant on "her clinical interview" with the defendant. *See Gillis*, 938 F.3d at 1192. But he doesn't explain, and we don't see, why that matters or how Dr. Whitney's methodology differs.

district court's exclusion of a *separate* expert's testimony under those standards. *See Gillis*, 938 F.3d at 1191–94. But even if we had also upheld the exclusion of the relevant testimony under Rule 702 and *Daubert*, that would make our Rule 704(b) ruling, at worst, an alternative holding. And we've explained that "an alternative holding is not dicta but instead is binding precedent." *Hitchcock v. Sec'y, Fla. Dep't of Corr.,* 745 F.3d 476, 484 n.3 (11th Cir. 2014*).*

Third, Herrera contends another of our precedents predates and contradicts *Gillis*: *United States v. Stahlman*, 934 F.3d 1199 (11th Cir. 2019). In *Stahlman*, a § 2422(b) defendant tried to have an expert testify very differently from the testimony here and in *Gillis*. Stahlman proffered that the expert would testify that he "<u>intended</u> to act out a fantasy, rather than have sexual contact with a minor." *Id*. at 1220. The district court excluded the testimony under Rule 704(b), and we affirmed. *Id*. at 1221–22.

But Stahlman argued that the D.C. Circuit's opinion in *United States v. Hite*, 769 F.3d 1154 (D.C. Cir. 2014), supported his position. *Stahlman*, 934 F.3d at 1221. In *Hite*, as the *Stahlman* panel noted, the D.C. Circuit allowed an expert in a § 2422(b) case to testify that "the defendant . . . had not been diagnosed with any psychiatric condition that was associated with a sexual attraction to children." *Id*. Distinguishing *Stahlman*'s facts from those of *Hite*, the panel opined that the testimony in *Hite* was permissible under Rule 704(b) because it did not "directly opine[] on the defendant's intent." *Id*.

But as the difference in outcomes between *Stahlman* and *Hite* shows, to decide the issue in *Stahlman*, the panel did not need to give its opinion on the testimony in *Hite*. That makes its comments on the admissibility of the *Hite* testimony dicta. *See United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("[D]icta is defined as those portions of an opinion that are 'not necessary to deciding the case then before us.'") (quoting *United States v. Eggersdorf*, 126 F.3d 1318, 1322 n.4 (11th Cir.1997))). And unlike holdings, dicta does not bind us. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) ("We are not required to follow dicta in our own prior decisions."). So *Stahlman* does not relieve us of our obligation to follow *Gillis*.

Fourth, Herrera argues that the intervening Supreme Court decision in *Diaz v. United States* abrogated *Gillis*'s holding. *See* 602 U.S. 526 (2024). But we may depart from our precedent because of an intervening Supreme Court decision only if that decision is "clearly on point and clearly contrary to the panel precedent." *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 743 (11th Cir. 2024) (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)) (internal quotation marks omitted). That means the Supreme Court case must be "*squarely on point*" and must "*actually abrogate or directly conflict with, as opposed to merely weaken, the holding*" of the prior panel." *Id.* (quoting *Kaley*, 579 F.3d at 1255). *Diaz* doesn't satisfy these requirements.

In *Diaz*, the Supreme Court held that "[a]n expert's conclusion that 'most people' in a group have a particular mental state is

23-13706                Opinion of the Court                17

not an opinion about 'the defendant' and thus does not violate Rule 704(b)." 602 U.S. at 538. The Court elaborated that Rule 704(b) bars only "opinions . . . 'about' the ultimate issue of the defendant's mental state. . . ." *Id.* at 537. And that's limited to testimony that "includes a conclusion on that precise topic, not merely if it concerns or refers to that topic." *Id.* But the Court did not decide whether an opinion on a § 2422(b) defendant's sexual attraction to minors equates to a "conclusion" on the mental state required to be convicted under the provision. So *Diaz* does not squarely contradict *Gillis*. And we can't depart from *Gillis* because of that decision.

At bottom, we are bound by our precedent in *Gillis*. So we hold the district court did not abuse its discretion when, under Rule 704(b), it excluded Dr. Whitney's testimony that Herrera's "psychosexual assessment showed no indications that [Herrera] has a sexual interest in children." And for that reason—and because Herrera does not challenge the barring of that testimony on any basis other than as an alleged improper application of the Federal Rules of Evidence—the district court did not violate Herrera's constitutional right to present a defense.

## IV.    CONCLUSION

For these reasons, we affirm Herrera's conviction.

**AFFIRMED.**