MARTINEZ, District Judge:
Jameka Evans appeals the sua sponte dismissal of her employment discrimination complaint, filed pursuant to 42 U.S.C. § 2000e et seq., in which she alleged that she was discriminated against because of her sexual orientation and gender nonconformity, and retaliated against after she lodged a complaint with her employer’s human resources department. We have carefully reviewed the Appellant’s and amicus curiae’s initial and supplemental briefs,[1] and have had the benefit of oral argument. For the reasons set forth below, we affirm the district court’s dismissal order in part, and vacate and remand in part.
I.
Evan's filed a pro se complaint against Georgia Regional Hospital (“Hospital”), *1251 Chief Charles Moss, Lisa Clark, and Senior Human Resources Manager Jamekia Powers, alleging employment discrimination under Title VII in her job as a security officer at the Hospital. Evans also moved for leave to proceed in forma pau-peris before the district court, and for appointment of counsel. In her complaint, Evans alleged the following facts, which this Court accepts as true.[2]
Evans worked at the Hospital as a security officer from August 1, 2012, to October 11, 2018, when she left voluntarily. During her time at the Hospital, she was denied equal pay or work, harassed, and physically assaulted or battered. She was discriminated against on the basis of her sex and targeted for termination for failing to carry herself in a “traditional woman[ly] manner.” Although she is a gay woman, she did not broadcast her sexuality. However, it was “evident” that she identified with the male gender, because of how she presented herself — “(male uniform, low male haircut, shoes, etc.”).
Evans had not met Powers before the harassment began and had never discussed her sexual preference with her. Yet, Evans was punished because her status as a gay female did not comport with Moss’s gender stereotypes and this caused her to experience a hostile work environment. For example, a less qualified individual was appointed to be her direct supervisor. Moreover, internal e-mails provided evidence that Moss was trying to terminate Evans by making her employment unbearable, because she had too much information about his wrongdoing in the security department.
Evans also explained that her employers had violated some regulations or policies and that she had initiated an investigation. After Evans lodged her complaints about these violations, Powers asked Evans about her sexuality, causing Evans and “others” to infer that her sexuality was the basis of her harassment and that upper management had discussed it during the investigation. Finally, Evans provided that she was harassed and retaliated against because she spoke to human resources about Moss’s discriminatory behavior. Evans also reserved the right to amend her complaint should new information arise.
Evans attached to her complaint a “Record of Incidents.” This report stated that Moss had repeatedly closed a door on Evans in a rude manner, that she experienced scheduling issues and a shift change, and that a less qualified individual was promoted as her supervisor. She detailed the problems she had with her new supervisor, Corporal Shanika Johnson, and asserted that Johnson scrutinized and ha-' rassed her. Evans also asserted that someone had tampered with her equipment, including her radio, clip, and shoulder microphone.
Evans also included an e-mail from Harvey Sanchez Pegues, which stated that Moss had harassed Pegues on a daily basis, had a habit of favoritism, changed Pegues’s schedule frequently, had created a tense and unpleasant work environment, and had a habit of targeting people for termination. Evans also attached a letter from Jalisia Bedgard, which stated that Johnson and Moss had expected Evans to quit because of Johnson’s promotion and, if not, because of a bad shift change that would t cause Evans scheduling conflicts. Another attached letter from Cheryl Sanders, Employee Relations Coordinator in the human resources department at the Hospital, indicated that the Hospital had investigated Evans’s complaints of favoritism, inconsistent and unfair practices, and *1252 inappropriate conduct, and had found no evidence that she had been singled out and targeted for termination. Finally, Evans attached e-mail correspondence between Pegues and Evans, which indicated that: (1) Pegues believed that Moss was trying to target Evans for termination because she had substantial evidence of wrongdoing against him, and (2) Moss had changed the qualifications of a job to prevent other candidates from qualifying.
A magistrate judge subsequently issued a report and recommendation (“R&R”), wherein the magistrate judge granted Evans leave to proceed in forma pauperis, denied her request for appointment of counsel, and sua sponte. screened her complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The magistrate judge preliminarily noted that that while the Equal Employment Opportunity Commission (“EEOC”) had not indicated that there was an untimeliness issue, Evans reportedly worked at the Hospital from August 2012 through October 2018, and thus, only had 180 days from the alleged discriminatory conduct to file. The magistrate judge also noted that Evans’s complaint in the district court needed to be consistent with her EEOC complaint. With respect to Evans’s claim of discrimination based on her sexual orientation, or status as a gay female, the magistrate judge reasoned that — based on case law from all circuits that had addressed the issue— Title VII “was not intended to cover discrimination against homosexuals.” With regard to Evans’s claim of discrimination based on gender non-conformity, the magistrate judge concluded that it was “just another way to claim discrimination based on sexual orientation,” no matter how it was otherwise characterized. Additionally, the magistrate judge recommended dismissal of the retaliation claim on the basis that Evans failed to allege that she opposed an unlawful employment practice, given that sexual orientation was not protected under Title VII. Additionally, the R&R noted that Moss, Clark, and Powers were coworkers or supervisors sued in their individual capacities and, therefore, were not actionable defendants under Title VII. Finally, the magistrate judge recommended dismissing all of Evans’s claims, with prejudice, without allowing her to leave to amend, because she pled no actionable claim nor seemed likely to be able to do so.
Evans timely objected to the R&R. In particular, Evans argued that her gender non-conformity and sexual orientation discrimination claims were actionable under Title VII as sex-based discrimination. She also argued that, as a pro se litigant, she should have béen permitted to amend her complaint, stating that “new supplemental evidence ha[d] arisen that affirm[ed] the consistency of the claims alleged in [her] complaint with the claims investigated in the EEOC charge, satisfying the administrative consistency doctrine,” and noting that she had reserved her right to amend in her complaint.
The Lambda Legal Defense and Education Fund, Inc., (“Lambda Legal”) requested permission to file an amicus curiae brief in support of Evans’s objections to the R&R, which the district court granted. Lambda Legal argued that an employee’s status as lesbian, gay, bisexual or transgender (“LGBT”), does not defeat a claim based on gender non-conformity. Lambda Legal also disputed the magistrate judge’s assertion that sexual orientation is not an actionable basis under Title VII, and disputed the assertion that all other courts have held so. Lambda Legal also argued that Evans did not need to plead a prima facie case to survive dismissal at the pleading stage. It also disputed the magistrate judge’s recommendation that Evans’s retaliation claim be dismissed with prejudice, *1253 arguing that Evans did not need to actually engage in protected activity to state a claim for retaliation so long as her belief that sexual orientation was covered by Title VII was not unreasonable. Lambda Legal also argued that the magistrate judge’s remarks that Evans’s claims were untimely and that her complaint was inconsistent with the EEOC investigation were “specu-lati[ve]” and “premature at best.” Lastly, it argued that Evans was entitled to leave to amend, because any necessary amendment would not be futile given Evans’s colorable claims.
The district court conducted a de novo review of the entire record and adopted— without further comment — the R&R, dismissed the case with prejudice, and appointed counsel from Lambda Legal to represent Evans on appeal.
On appeal, Evans, with the support of the EEOC as amicus curiae, argues that the district court erred in dismissing her claim that she was discriminated against for failing to conform to gender stereotypes, because an LGBT person may properly bring a separate discrimination claim for gender non-conformity in this Circuit. Evans also argues that, contrary to the district court’s assertion, sexual orientation discrimination is, in fact, sex discrimination under Title VII. Evans further argues that the district court erred in concluding that she did not meet the requirements to bring a retaliation claim, because a plaintiff can establish a prima facie case of unlawful retaliation if there is a good faith, reasonable belief that the employer was acting unlawfully. Finally, Evans argues that the district court erred in failing to allow her leave to amend her complaint, because pro se litigants should be allowed to amend their complaints when they have a viable argument. We address each argument in turn.
II.
We review de novo a district court’s sua sponte dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), viewing the allegations in the complaint as true. Hughes v. Lott, 350 F.3d 1157, 1159-60 (11th Cir. 2003). Dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). However, “[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.” Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Moreover, we may affirm on any ground supported by the record, regardless of whether that ground was relied on or considered below. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).
To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, accepted as true, states a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A claim is plausible on its face when there is a “reasonable inference that the defendant is liable for the misconduct alleged.” Id. A Title VII complaint need not allege facts sufficient to make out a classic prima facie case, but must simply provide enough factual matter to plausibly suggest intentional discrimination. See Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1246 (11th Cir. 2015).
III.
 First, Evans argues that the district court erred in dismissing her claim that she was discriminated against for failing to conform to gender stereotypes, be *1254 cause an LGBT person may bring a separate discrimination claim for gender nonconformity.[3] She contends that her status as a lesbian supports her claim of sex discrimination, because discrimination against someone for her orientation often coincides with discrimination for gender non-conformity. Evans further asserts that discrimination based on gender stereotypes is a broad claim that encompasses more than just her appearance, but also provides for suits based on various other stereotypes, such as family structure.
Even though we hold, infra, that discrimination based on gender non-conformity is actionable, Evans’s pro se complaint nevertheless failed to plead facts sufficient to create a plausible inference that she suffered discrimination. See Surtain, 789 F.3d at 1246. In other words, Evans did not provide enough factual matter to plausibly suggest that her decision to present herself in a masculine manner led to the alleged adverse employment actions. Id. Therefore, while a dismissal of Evan’s gender non-conformity claim would have been appropriate on this basis, these circumstances entitle Evans an opportunity to amend her complaint one time unless doing so would be futile.
When “a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.” Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (citation omitted). Although a pro se litigant generally should be permitted to amend her complaint, a district court need not allow amendment when it would be futile. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). “Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.” Id.
Here, Evans, a pro se litigant, has not previously amended her complaint, and it cannot be said that any attempt to amend would be futile with respect to her gender non-conformity claim and possibly others. See Bryant, 252 F.3d at 1163; Sparks, 510 F.3d at 1310. Discrimination based on failure to conform to a gender stereotype is sex-based discrimination. Glenn v. Brumby, 663 F.3d 1312, 1316 (11th Cir. 2011) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), superseded by statute on other grounds, 42 U.S.C. § 2000e-5(g)(2)(B) (1991), as stated in Landgraf v. USI Film Prods., 511 U.S. 244, 251, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). Specifically, in Glenn, we held that discrimination against a transgender individual because of gender-nonconformity was sex discrimination. 663 F.3d at 1317 (applying gender-nonconformity sex discrimination in a 42 U.S.C. § 1983 action). In that decision, we stated that “[a]ll persons, whether transgender or not, are protected from discrimination on the basis of gender stereotype,” and we reasoned that, because those protections apply to everyone, a transgender individual could not be excluded. Id. at 1318-19. We hold that the lower court erred because a gender nonconformity claim is not “just another way to claim discrimination based on sexual *1255 orientation,” but instead, constitutes a separate, distinct avenue for relief under Title VII.
Accordingly, we vacate the portion of the district court’s order dismissing Evans’s gender non-conformity claim with prejudice and remand with instructions to grant Evans leave to amend such claim.
IV.
Evans next argues that she has stated a claim under Title VII by alleging that she endured workplace discrimination because of her sexual orientation. She has not. Our binding precedent forecloses such an action. Blum v. Gulf Oil Corp., 597 F.2d 936, 938 (5th Cir. 1979)[4] (“Discharge for homosexuality is not prohibited by Title VII.... ”). “Under our pri- or precedent rule, we are bound to follow a binding precedent in this Circuit unless and until it is overruled by this court en banc or by the Supreme Court.” Offshore of the Palm Beaches, Inc. v. Lynch, 741 F.3d 1251, 1256 (11th Cir. 2014) (internal quotations omitted):
The EEOC argues that the statement in Blum regarding discharge for homosexuality is dicta and not binding precedent. We disagree. Before making such statement, the panel in Blum remarked: “We comment briefly on the other issues raised on appeal.” 597 F.2d at 938 (emphasis added). As a result, the statement in Blum concerning the viability of a sexual orientation claim was not dicta, but rather directly addressed a. question before the Court. Even if Blum is read as disposing of the sexual orientation claim for another reason,[5] an alternative reason does not render as dicta this Court’s holding that there is no sexual orientation action under Title VII.
In Hitchcock v. Sec’y, Florida Dep’t of Corr., 745 F.3d 476 (11th Cir. 2014), this Court addressed whether an alternative holding is dicta:
[A]n alternative holding is not dicta but instead is binding precedent. See, e.g., Massachusetts v. United States, 333 U.S. 611, 623, 68 S.Ct. 747, 754, 92 L.Ed. 968 (1948) (explaining that where a case has “been decided on either of two independent grounds” and “rested as much upon the one determination as the other,” the “adjudication is effective for both”); Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 340, 48 S.Ct. 194, 196, 72 L.Ed. 303 (1928) (“It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion.”); United States v. Title Ins. & Trust Co., 265 U.S. 472, 486, 44 S.Ct. 621, 623, 68 L.Ed. 1110 (1924) (“[W]here there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, the ruling on neither is obiter, but each is *1256 the judgment of the court, and of equal validity with the other.”) (quotation marks omitted); Bravo v. United States, 532 F.3d 1154, 1162 (11th Cir. 2008) (explaining that an “alternative holding counts because in this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings”); Johnson v. DeSoto Cnty. Bd. of Comm’rs, 72 F.3d 1556, 1562 (11th Cir. 1996) (“[W]e are bound by alternative holdings.”); McLellan v. Miss. Power & Light Co., 545 F.2d 919, 925 n.21 (5th Cir. 1977) (en banc) (“It has long been settled that all alternative rationales for a given result- have precedential value.”).
745 F.3d at 484 n.3. Applying this well-established law, the statement from Blum regarding a sexual orientation claim is not dicta, but rather binding precedent.
Evans and the EEOC also argue that the Supreme Court decisions in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), support a cause of action for sexual orientation discrimination under Title VII. Again, we disagree. The fact that claims for gender non-conformity and same-sex discrimination can be brought pursuant to Title VII does not permit us to depart from Blum. See Randall v. Scott, 610 F.3d 701, 707 (11th Cir. 2010) (“While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point.” (citation omitted)); N.L.R.B. v. Datapoint Corp., 642 F.2d 123, 129 (5th Cir. 1981) (“Without a clearly contrary opinion of the Supreme Court or of this court sitting en banc, we cannot overrule a decision of a prior panel of this court....”). Price Waterhouse and Oncale are neither clearly on point nor contrary to Blum. These Supreme Court decisions do not squarely address whether sexual orientation discrimination is prohibited by Title VII.
Finally, even though they disagree with the decisions, Evans and the EEOC acknowledge that other circuits have held that sexual orientation discrimination is not actionable under Title VII. See, e.g., Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999) (“Title VII does not proscribe harassment simply because of sexual orientation.”); Simonton v. Runyon, 232 F.3d 33, 36 (2d Cir. 2000) (“Simonton has alleged that he was discriminated against not because he was a man, but because of his sexual orientation. Such a claim remains non-cognizable under Title VII.”); Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001) (“Title VII does not prohibit discrimination based on sexual orientation.”); Wrightson v. Pizza Hut of Am., 99 F.3d 138, 143 (4th Cir. 1996), abrogated on other grounds by Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (“Title VII does not afford a cause of action for discrimination based upon sexual orientation.... ”); Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 762 (6th Cir. 2006) (“[Sjexual orientation is not a prohibited basis for discriminatory acts under Title VII.”); Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc., 224 F.3d 701, 704 (7th Cir. 2000) (“[Hjarassment based solely upon a person’s sexual preference or orientation (and not on one’s sex) is not an unlawful employment practice under Title VII.”); Williamson v. A.G. Edwards & Sons, Inc., 876 F.2d 69, 70 (8th Cir. 1989) (“Title VII does not prohibit discrimination against homosexuals.”); Rene v. MGM Grand Hotel, Inc., 305 F.3d 1061, 1063-64 (9th Cir. 2002) (“[A]n employee’s sexual orientation is irrelevant for purposes of Title VII. It neither provides nor precludes a cause of action for sexual harassment. That the *1257 harasser is, or may be, motivated by hostility based on sexual orientation is similarly irrelevant, and neither provides nor precludes a cause of action.”); Medina v. Income Support Div., 413 F.3d 1131, 1135 (10th Cir. 2005) (“Title VII’s protections, however, do not extend to harassment due to a person’s sexuality.... Congress has repeatedly rejected legislation that would have extended- Title VII to cover sexual orientation.”) (internal quotations omitted). Evans and the EEOC question these decisions, in part, because of Price Water-house and Oncale. Whether those Supreme Court cases impact other circuit’s decisions, many of which were decided after Price Waterhouse and Oncale, does not change our analysis that Blum is binding precedent that has not been overruled by a clearly contrary opinion of the Supreme Court or of this Court sitting en banc. Accordingly, we affirm the portion of the district court’s order dismissing Evan’s sexual orientation claim.
V.
Evans also argues that the district court erred in concluding that she did not meet the requirements for a retaliation claim, because a plaintiff can establish a prima facie case of unlawful retaliation if there was a good faith, reasonable belief that the employer was acting unlawfully.
However, we will generally not review a magistrate judge’s findings or recommendations if a party failed to object to those recommendations below. See 11th Cir. R. 3-1. Title 28 of the United States Code, Section 636(b)(1) provides that, within 14 days of being served with a copy of a magistrate judge’s recommendations or findings, a party may file written objections with the court, and the court shall conduct a de novo review of the issues raised. 28 U.S.C. § 636(b)(1). Pursuant to 11th Cir. R. 3-1, a party who fails to object to a magistrate judge’s findings or recommendations in an R&R “waives the right to challenge on appeal the district court’s order based on unobjected-to factual and legal conclusions,” provided the party was given proper notice of the objection time period and the consequences of failing to do so, as was the case here. Consequently, we will only review a waived objection, for plain error, if necessary in the interests of justice. Id. Review for plain error “rarely applies in civil cases.” Ledford v. Peeples, 657 F.3d 1222, 1258 (11th Cir. 2011). Even when it does, we require a greater showing of error than in criminal appeals. United States v. Levy, 391 F.3d 1327, 1343 n.12 (11th Cir. 2004). We find nothing in the record that suggests that plain error review is appropriate in this appeal.
Further, we do not consider an amicus curiae to be a party in the case where it appears. See In re Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1249 n.34 (11th Cir. 2006). Moreover, without “exceptional circumstances, amici curiae may not expand the scope of an appeal to implicate issues not presented by the parties to the district court.” Richardson v. Ala. State Bd. of Educ., 935 F.2d 1240, 1247 (11th Cir. 1991) (regarding issues raised on appeal by amici curiae that were not raised in the appellant’s brief on appeal).
Here, Evans failed to object to the district court’s dismissal of her retaliation claim. While Evans specifically objected to the dismissal of her claims for discrimination based on gender non-conformity and sexual orientation, as well as the magistrate judge’s denial of her request for leave to amend her complaint, notably absent from her filing was any mention of her retaliation claim. Additionally, although an amicus curiae brief was filed by Lambda Legal, which included an objection on this matter, Lambda Legal was not *1258 a party to the litigation, or Evans’s counsel at the time, and thus could not preserve that objection for her. See Bayshore, 471 F.3d at 1249 n.34. For these reasons, we consider any challenge to the district court’s treatment of Evan’s retaliation claim waived. 11th Cir. R. 3-1.
For the foregoing reasons, the district court’s order dismissing Evans’s action with prejudice is affirmed in part, and vacated in part and remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.

. This appeal arises from Evans’s decision to proceed in forma pauperis, and the district court reviewed the allegations without appel-lees receiving service. 28 U.S.C. § 1915(e)(2)(B)(ii). Appellees did not file a brief for this Court’s consideration or otherwise appear on appeal, apart from informing the Court via letter that the district court dismissed the action before service was perfected on them.

. Hughes v. Lott, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

. Evans also briefly mentions that the district court erred in speculating about the timeliness of her EEOC charge and whether the allegations in her complaint were sufficiently similar to the EEOC’s investigation. However, Evans provided only a passing reference to these issues, and no real argument to them. Therefore, as a passing reference is insufficient to preserve an issue on appeal, we consider these issues abandoned. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

. The Court in Blum stated, in pertinent part: It is questionable whether appellant has presented a prima facie Title VII case of racial, sexual, or religious discrimination. However, even if he has done so, Gulf articulated a legitimate reason for his discharge:
Mr. Blum admitted using Gulf's telephones for his own business. From what Gulf then knew of appellant’s use as opposed to his later explanations and qualifications it had a legitimate reason for terminating him. Although he has attempted to show that this reason was a pretext, he has not shown that anyone in authority was aware that other employees used Gulf telephones for non-Gulf business.
597 F.2d at 937-38 (internal citations omitted).