[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12741
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-24214-DLG

CONTRELL LEO FLOYD,

Plaintiff-Appellant,

versus

CITY OF MIAMI BEACH,
Miami Beach City Hall,
K. ESPADA,
Miami Beach Police Officer,
ORISME,
Miami Beach Police Officer,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 17, 2018)

Before WILSON, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Contrell Floyd, a *pro se* prisoner[1] proceeding *in forma pauperis*, appeals the dismissal with prejudice of his 42 U.S.C. § 1983 complaint for failure to state a claim on which relief could be granted.  After careful review, we vacate and remand for further proceedings.

## I.

Floyd's complaint alleges the following facts, which we accept as true.  At around 4:20 a.m. on August 3, 2013, Floyd, an African-American male, was driving home with his cousin after attending several night clubs.  They were "bobbing their heads to the music on the radio" with the windows down when a Miami Beach Police SUV traveling in the opposite direction made a U-turn and started following them.  Though Floyd was not violating any traffic laws and the music was not too loud to disturb the peace, the police SUV activated its overhead lights and conducted a traffic stop of Floyd's car.  Floyd believes he and his cousin were targeted based on a stereotypical view that black males listening to music with the windows down in the early morning hours "must be up to no good."

Floyd pulled over and waited as Miami Beach Police Officers Orisme and K. Espada approached.  Orisme came to the driver's side window and "started

---

[1] As far as we can tell from the complaint, Floyd is incarcerated for reasons unrelated to the circumstances giving rise to this case.

2

eyeballing" inside Floyd's car.  In response to Orisme's questions, Floyd explained that they were heading home from the club, that he had not been drinking or smoking pot, and that he did not possess any contraband.  After ordering Floyd to step out of the vehicle, Orisme examined him for signs of intoxication or drugs and, finding none, directed Floyd to turn around and put his hands on the car so he could be searched.  The "thorough search of Floyd's person" did not reveal anything illegal.

Finding no contraband or signs of intoxication, Orisme finally asked for Floyd's driver's license to run a records check and to see if he had any warrants or open cases.  Floyd disclosed that he did not have a driver's license and instead produced a state identification card.  The records check did not turn up any warrants or open cases.  Once the records check was complete, Orisme and Espada informed Floyd that they were giving him tickets for an inoperative tag light and for not having a valid driver's license. When Floyd protested that his tag light was working, the officers told him they had "to make it look good on paper."  After issuing the two tickets, the officers said he was free to go.

As a result of the ticket for driving without a valid license, Floyd was later arrested and jailed for violating the conditions of his probation.  While in jail, he lost his two jobs, his apartment, and various personal property, and he became depressed.  He was released from jail in September 2014.

3

Upon his release, Floyd challenged the two tickets, maintaining that Orisme and Espada had no basis to stop him because his tag light was working properly. In an attempt to prove his innocence, Floyd requested the dashboard video footage from the officers' SUV, but the City refused to release it. Eventually, a court dismissed the two tickets, despite the officers' attempts to mislead the court by "lying about the incident."

Thereafter, Floyd filed this federal lawsuit. Floyd sued Orisme and Espada in their individual and official capacities, alleging that they had violated his rights under the Fourth Amendment. Floyd also sued the City of Miami Beach and its police department, alleging that the City had known for years that its officers were unlawfully profiling, harassing, detaining, searching, and arresting innocent African-Americans and had taken no action to address the issue, like instituting adequate training and supervision. Floyd requested compensatory and punitive damages as well as declaratory relief.

A magistrate judge screened the complaint before service to the defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and determined that it failed to state a claim. In a report and recommendation ("R&R") entered on May 1, 2017, the magistrate judge found that Floyd failed to state a claim against Espada and Orisme in their individual capacities because he was not arrested during the traffic stop. Because he was arrested later pursuant to a warrant for violating his

4

probation, the magistrate judge reasoned, "proving that he had operative tag lights on the night when he was stopped by Officers Orisme and Espada, does nothing to invalidate his arrest based on an arrest warrant issued by a circuit judge," plus Floyd did not dispute "that he did not have a valid driver's license." The magistrate judge also found that Floyd's allegations against the City were too conclusory to show a policy or custom of violating the rights of African-American individuals, and that his official-capacity claims failed for the same reasons. Finally, the magistrate judge concluded that it would be futile to allow Floyd to amend his complaint.

On May 31, 2017, the district court adopted the R&R and dismissed the case. Several days after that, the district court received Floyd's objections to the R&R, which Floyd turned over to prison officials for mailing on May 31. Floyd attached to his objections a letter from the Bureau of Prisons, which stated that Floyd's institution was on lockdown from May 4 through May 30 and that he did not have access to his legal materials during that time. The court did not address Floyd's objections. Floyd then brought this timely appeal.[2]

## II.

We review *de novo* a district court's *sua sponte* dismissal for failure to state

---

[2] Ordinarily, the failure to object to an R&R results in a waiver of "the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," except for plain error. 11th Cir. Rule 3-1. Here, however, Floyd produced evidence that he was prevented from filing timely objections due to the lockdown. In these circumstances, we conclude that the waiver rule of Rule 3-1 does not apply.

a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), viewing the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003).  Under § 1915(e)(2), the district court must dismiss the complaint of an *in forma pauperis* plaintiff if the court determines that the action "fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).  The standards governing dismissals under Federal Rule of Civil Procedure 12(b)(6) apply to § 1915(e)(2)(B)(ii). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

To avoid dismissal for failure to state a claim, the complaint "must include enough facts to state a claim to relief that is plausible on its face." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quotation marks omitted).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quotation marks omitted).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

We liberally construe the filings of *pro se* litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, when a more carefully drafted complaint

6

might state a claim, a *pro se* litigant "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1254 (11th Cir.) (quotation marks omitted), *cert. denied,* 138 S. Ct. 557 (2017). However, the court need not allow any amendment where amendment would be futile. *Id.*

Both individuals and municipalities are subject to suit under § 1983. An individual who, acting under color of state law, violates a person's constitutional rights is liable under § 1983. *See* 42 U.S.C. § 1983. A city can be liable under § 1983 when its "policy" or "custom" causes a constitutional violation. *Grech v. Clayton Cty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) (quotation marks omitted). "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). When a plaintiff alleges a failure to train or supervise, "a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

We first address Floyd's § 1983 claims against Orisme and Espada in their individual capacities. Floyd primarily contends that these defendants violated his rights under the Fourth Amendment when they conducted a traffic stop without any lawful basis and then falsely stated that his tag light was out.

7

"[Section] 1983 allow[s] a plaintiff to seek money damages from government officials who have violated his Fourth Amendment rights." *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted). A traffic stop is constitutional if the officers have probable cause to believe that a traffic violation has occurred or reasonable suspicion that criminal activity is afoot. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). And "[i]n the name of investigating a person who is no more than suspected of criminal activity, the police may not carry out a full search of the person or of his automobile or other effects." *Florida v. Royer*, 460 U.S. 491, 499 (1983).

Floyd has stated a plausible claim under § 1983 against officers Orisme and Espada. Taking the facts in Floyd's complaint as true, as we are required to do, *see Hughes*, 350 F.3d at 1159–60, Orisme and Espada violated Floyd's rights under the Fourth Amendment when they conducted a traffic stop without probable cause or reasonable suspicion and then "thorough[ly] search[ed]" his person. According to Floyd's complaint, he was not violating any traffic law, his music was not too loud to be a nuisance, his tag light was working properly, he was not intoxicated, and he did not possess any contraband. These facts, accepted as true, plausibly allege a

seizure and search in violation of the Fourth Amendment.  *See Arvizu*, 534 U.S. at 273; *Royer*, 460 U.S. at 499; *Harris*, 526 F.3d at 1337.

The district court erred by focusing solely on the arrest for a probation violation.  Floyd, however, mainly challenged the initial seizure.[3]  Nevertheless, we agree with the district court that the complaint provides no basis to challenge his subsequent arrest, which rested on the undisputed fact that Floyd was driving without a valid license.  That the officers may have discovered that fact during an unlawful stop is irrelevant because "the exclusionary rule does not apply in a civil suit against police officers."  *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016).  In other words, whether the initial stop was invalid does not affect the validity of his later arrest based on an arrest warrant for a probation violation.

As for Floyd's claim against the City, we agree with the district court that the complaint is insufficient to state a claim to relief.  Besides his own experience, Floyd offers only broad, conclusory allegations about the City's policies or customs.  That is not enough.  First, Floyd's own experience is inadequate by itself because "[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the

---

[3]    On appeal, Floyd also indicates that he wishes to bring a claim for malicious prosecution, but the basis for that claim is not clear from his brief on appeal.  The issuance of the traffic tickets was not a seizure for purposes of the Fourth Amendment.  *See Bielanski v. Cty. of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) ("[A] summons alone does not equal a seizure for Fourth Amendment purposes. To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim.").  Moreover, probable cause supported the issuance of the ticket for driving without a valid license.

municipality." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011). Second, Floyd's conclusory allegations and his "formulaic recitation of the elements of a cause of action" are insufficient to state a plausible claim to relief. *See Twombly*, 550 U.S. at 555.

However, we conclude that Floyd should be given an opportunity to amend his complaint against the City. *Evans*, 850 F.3d at 1254. Floyd may be able to identify facts supporting his claim that the City has known for years that its officers were violating the constitutional rights of innocent African-Americans and has taken no action to address the issue. If he did so, he potentially could state a viable claim against the City. *See Evans*, 850 F.3d at 1254. In other words, amendment would not necessarily be futile in those circumstances. As a result, it was error for the district court to dismiss Floyd's complaint under § 1915(e)(2)(B)(ii) without leave to amend.

For these reasons, we vacate the dismissal of Floyd's complaint with prejudice and we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**