[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10781
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-03553-ODE


GUY W. HARRISON, III,

Plaintiff-Appellant,

versus

FULTON COUNTY, GEORGIA,

Defendant-Appellee,

ANGELA PARKER, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 17, 2018)

Before MARCUS, ROSENBAUM and HULL, Circuit Judges.

PER CURIAM:

Guy W. Harrison III, a now-retired employee of the Public Works Department of Fulton County, Georgia, appeals pro se from the district court's order granting summary judgment in favor of defendant Fulton County. After careful review of the record and briefs, we affirm.

## I.    BACKGROUND

In granting summary judgment, the district court adopted the magistrate judge's 55-page report and recommendation (the "report"). That report included a meticulous and thorough review of the evidence and facts in this case. Since the parties are already familiar with these facts, we recount them more briefly.

### A.    Employment with the Public Works Department

This case arose out of plaintiff Guy Harrison's employment as a Sewer System Superintendent with the Fulton County Public Works Department from July 2000 until he retired on January 14, 2014. This case does not involve termination or his voluntary retirement. Rather, Harrison claims that, during a part of his employment, Fulton County failed to promote him, discriminatorily gave him lower-level job duties, and did not reasonably accommodate his disability.

In 2006, Harrison was diagnosed with prostate cancer. When he returned from six months of medical leave in 2007, Harrison (still as a Superintendent) was

2

assigned to a new program (but still in the Public Works Department) under the supervision of David Tucker.  Both Harrison and Tucker are African Americans.

The new program, referred to as Capacity Management Operations and Maintenance ("CMOM"), was focused on reducing and eliminating water overflows.  At the times relevant to this action, Chris Browning was the Assistant Director of the Public Works Department, and Alysia Shands was the Human Resources Manager for the Water Resources Department.

**B.     New Work Plan**

In 2008, under the CMOM program, supervisor Tucker developed a work plan to map, evaluate, and record data about manholes and water valves throughout Fulton County (the "Work Plan").  Before implementation, Assistant Director Browning and Human Resources Manager Shands consulted with the personnel department to ensure that the duties outlined in the Work Plan were consistent with the job classification for a Superintendent.

The Work Plan divided duties between Harrison and James Henson, another Superintendent.  Henson, who is white, was required to locate manholes and sewer fixtures.  Harrison was assigned to open and inspect the manholes and sewer fixtures.  In one form or another, all Superintendents were required to perform physical activity as a part of their work.

3

## C.    Harrison's Complaints

As a result of his new duties, Harrison sought to work closer to home and later complained to his supervisor that, unlike his white coworker Henson, Harrison's duties were below his job classification, he did not receive proper equipment, and he was required to work in a cubicle instead of an enclosed office.

During his employment, Harrison also complained to his supervisor that he had been denied several promotions, including (1) water services manager in July 2008, (2) senior construction project manager in March 2009, (3) deputy land administrator in January 2011, and, later, (4) Sewer System Superintendent II in April 2013.

## D.    Internal Grievance, Accommodation Request, and First EEOC Charge

In early 2009, Harrison took a number of steps to express his dissatisfaction. First, Harrison filed a grievance with Fulton County.  Second, he contacted the Fulton County Office of Disability Affairs ("ODA") and filed an "Understanding and Consent to Proceed" form but indicated that he did not wish to proceed with the reasonable accommodation process.  Two months later, in April 2009, Harrison returned to the ODA and elected to proceed with the reasonable accommodation process.

Third, in March 2009, Harrison participated in an unrelated internal investigation on behalf of a coworker, James Marks, who had filed an Equal Employment Opportunity Commission ("EEOC") charge against Fulton County.

And fourth, in May 2009, Harrison filed his own EEOC charge against Fulton County, alleging discrimination in his job duties based on his race, a failure to reasonably accommodate his disability, and retaliation based on his participation in the EEOC investigation for James Marks.

## E.    Disability Determination and Fulton County's Responses to Harrison's Complaints

In late May 2009, Harrison's physician submitted documentation to Fulton County indicating that Harrison was unable to lift more than 100 pounds and may need to urinate frequently.  In response, on June 2, 2009, the ODA issued a letter certifying Harrison as disabled for purposes of the Americans with Disabilities Act ("ADA") and scheduled an interactive meeting for later in June 2009.

Before the interactive meeting, the Fulton County Grievance Review Committee issued a report, finding that the Public Works Department had erred in its practices and procedures for assigning jobs.  The Committee recommended that the Public Works Department reassign Harrison to tasks consistent with his "essential job duties."  In response, the Public Works Department restructured itself back to having four Superintendents split between North and South Fulton

5

County and revised the Work Plan to ensure that Harrison had job duties identical to those of his white coworker, Henson.

On the day of the interactive meeting, June 19, 2009, Harrison initially met with an ADA coordinator, Wayne Stokes, and an equal employment officer, Tilford Belle, about reasonable accommodations. On the issue of frequent urination, as described by Harrison's physician, Harrison told Stokes and Tilford that he had to urinate "maybe once an hour" and that it took him "30 to 45 minutes" to access a restroom while working in the field. According to Harrison, Stokes and Tilford instructed him to keep a log of each time he used the restroom.

Harrison later met with several employees of the Public Works Department at the scheduled interactive meeting and, as a result, received an additional employee on his team to lift manhole covers for him. After the fact, Harrison complained to his supervisor that this additional employee was not able to lift the manhole covers by himself and so Harrison was still required to help.

## F.    Second EEOC Charge and Desk Audit

On June 24, 2009, Harrison filed a second EEOC charge against Fulton County, alleging discrimination and retaliation based on his disability. Specifically, Harrison contended that, as a result of his first EEOC charge, Fulton County had retaliated against him by assigning him duties below his job classification and requiring him to keep a log of each time he used the restroom.

On August 21, 2009, during an ADA meeting, Harrison also informed Fulton County that his job assignment under the now-revised Work Plan was not sufficient and that the additional employee could not lift the manhole covers by himself. Fulton County responded by instructing Harrison to comply with his physician's orders and avoid engaging in any "heavy lifting."

On September 10, 2009, Fulton County conducted a desk audit of whether Superintendents were assigned duties that aligned with their job classifications. By memorandum dated September 11, 2009, the audit concluded that the duties performed by both Harrison and Henson were "not closely aligned with the essential duties as described in the job classification" of a Superintendent.

In October 2009, Fulton County removed Harrison from having to perform any fieldwork and moved him to a different office location that had different duties. Harrison does not complain about this move but says the move did not come fast enough.

## G.    EEOC Determination and Right-to-Sue Letters

Almost two years later, on September 14, 2011, Harrison received an EEOC determination related to his two EEOC charges. The EEOC letter indicated that there was "reasonable cause to conclude that [Harrison] was discriminated against because of his race . . . , his disability and in retaliation for opposing unlawful employment practices . . . ." and offered Harrison and Fulton County to join in

7

conciliation.  After conciliation failed, the Department of Justice ("DOJ") sent Harrison a right-to-sue letter (dated July 10, 2012) indicating that Harrison had 90 days to file suit.  This right-to-sue letter also indicated that it should not be interpreted as a "judgment [by the DOJ] as to whether or not [Harrison's] charge is meritorious."  Just over a year later, on July 30, 2013, Harrison received a second, and otherwise identical, DOJ right-to-sue letter as to the same two EEOC charges.

Before the district court, Harrison argued that he did not receive the first right-to-sue letter dated July 10, 2012 and thus he was justified in suing under the second letter.  Harrison's claims were allowed to proceed.

## H.    Pro Se Complaint and Counseled Second Amended Complaint

On October 28, 2013, proceeding pro se, Harrison filed this lawsuit against Fulton County and various employees of the Public Works Department.  The defendants moved to dismiss the complaint, and Harrison retained counsel. Harrison later amended his complaint twice and removed the claims against the individual employees of the Public Works Department.  This left Fulton County as the only defendant.

In his second amended complaint, Harrison asserted eleven claims against Fulton County: (1) racially hostile work environment and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Count 1); (2) failure to accommodate and hostile work environment under the

8

ADA, as amended, 42 U.S.C. § 12101, et seq. (Count 2); (3) retaliation under Title VII (Count 3); (4) race-based failure to promote and racially hostile work environment under 42 U.S.C. § 1981 (Count 4); (5) retaliation in violation of § 1981 (Count 5); (6) negligent hiring, training, supervision, and retention under Georgia law (Count 6); (7) gross negligence and negligence per se under Georgia law (Count 7); (8) punitive damages (Count 8); (9) attorney's fees and costs (Count 9); (10) racially hostile work environment under 42 U.S.C. § 1983 (Count 10); and (11) retaliation in violation of § 1983 (Count 11).

## I.    Fulton County's Motion to Dismiss

Fulton County moved to dismiss Harrison's second amended complaint. On July 29, 2015, the district court granted in part and denied in part Fulton County's motion, merging Harrison's claims under § 1981 and § 1983 and allowing five of his eleven claims to proceed: (1) race discrimination under Title VII from Count 1; (2) failure to accommodate under the ADA from Count 2; (3) retaliation under Title VII from Count 3; (4) race discrimination under § 1983, merged from Counts 5 and 11; and (5) retaliation under § 1983, merged from Counts 4 and 10.  Harrison later conceded that his only viable § 1983 claim

involved the alleged race-based failure to promote him to Sewer System Superintendent II in April 2013.[1]

## J.    Magistrate Judge's Report on Fulton County's Motion for Summary Judgment

After a period for discovery, Fulton County moved for summary judgment on Harrison's remaining claims.  Harrison opposed the motion.  In the 55-page report dated October 31, 2016, the magistrate judge recommended that the district court grant Fulton County's motion for summary judgment in its entirety.

As to Harrison's § 1983 race-based failure-to-promote claim, the magistrate judge determined that the only position within the applicable statute of limitations was the Sewer System Superintendent II position from 2013 and that Harrison had failed to state a prima facie case because the individual ultimately hired for this position was also an African American.

---

[1]To bring a claim under Title VII, an employee must file a charge with the EEOC.  See 42 U.S.C. § 2000e-5(e)(1) (stating that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ."); Shiver v. Chertoff, 549 F.3d 1342, 1344 (11th Cir. 2008).  Harrison has never filed an EEOC charge relating to either the deputy land administrator position from January 2011 or the Sewer System Superintendent II position from April 2013.  Thus, Harrison may not assert a Title VII claim based on an alleged race-based failure to promote him to either of these positions.  Rather, his only race-based failure-to-promote claim is under § 1983.

Similarly, the statute of limitations for a § 1983 claim arising out of events occurring in Georgia is two years. See Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003) (noting that, in § 1983 cases, federal courts apply the state's statute of limitations for personal injury actions).  Because Harrison filed this action in October 2013, the § 1983 statute of limitations has run on all alleged promotional opportunities prior to October 2011.

10

As to Harrison's retaliation claim under Title VII, the magistrate judge determined that Harrison failed to show a causal connection between any of Harrison's EEOC activity and any adverse employment action.  Harrison's first EEOC charge in May 2009 occurred after his new manhole duties were assigned in 2008.  Likewise, Harrison had not submitted any probative evidence that he was denied a promotion between his assisting a coworker, James Marks, in March 2009 and his filing an EEOC charge in May 2009.  Lastly, as to Harrison's EEOC charge in June 2009, the magistrate judge determined that Fulton County's request that Harrison keep a restroom log was not an adverse employment action.

As to race discrimination under Title VII, the magistrate judge determined that Harrison's challenged work assignments were not adverse employment actions because they were not accompanied by any tangible harm (e.g., a decrease in salary).  Likewise, Harrison could not show disparate treatment because Harrison's white coworker received similar below-classification job assignments as well.  The magistrate judge also noted that the tasks delegated under the CMOM program were from Harrison's supervisor, David Tucker, who was also an African American, and was thus unlikely to discriminate against Harrison.

As to Harrison's failure-to-accommodate claim under the ADA, the magistrate judge determined that: (1) Harrison's first specific demand for an accommodation was in April 2009; (2) Harrison's physician did not send

11

documentation until late May 2009; and (3) Fulton County granted a timely and reasonable accommodation by providing Harrison with an additional employee to lift manhole covers for him in June 2009.

Along with the report, the magistrate judge issued an order telling each party that they had 14 days to file objections to the report, that their objections must specify with particularity any alleged error, and that challenges not preserved by a specific objection to the report would be deemed waived on appeal, as follows:

> Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report . . . within [14 days] of service of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report . . . may be adopted as the opinion and order of the District Court, and on appeal, the Court of Appeals will deem waived any challenge to factual and legal findings to which there was no objection, subject to interests-of-justice plain error review. 11th Cir. R. 3-1.

## K.    Harrison's Counseled Objections

Through counsel, Harrison filed four pages of timely objections to the report. In his objections, Harrison contended that the magistrate judge did not follow the summary judgment standard because the judge inferred Fulton County's motives and decided facts in the light least favorable to Harrison. After this general contention, Harrison objected specifically to these three determinations by the magistrate judge: (1) Browning and Shands consulted with the personnel

12

department to ensure the duties in the Work Plan were consistent with a Superintendent's job duties; (2) Harrison had not established he was the only Superintendent without an enclosed office; and (3) Harrison was not required to lift manhole covers after he was provided with an additional employee for this purpose.

**L.      District Court's Summary Judgment Order and Harrison's Appeal**

In its order dated January 18, 2017, the district court overruled Harrison's three objections and adopted the magistrate judge's report.  The district court found that each of the magistrate judge's determinations was supported by the record evidence and that Harrison's objections were without merit.  Accordingly, the district court granted summary judgment in favor of Fulton County.  Harrison pro se appealed.

## II.      DISCUSSION

On appeal, Harrison contends that the record evidence presented genuine issues of material fact and that the district court erred by granting summary judgment in favor of Fulton County.  Likewise, he seeks to reargue the merits of each of his claims.  For the reasons that follow, we affirm the district court's grant of summary judgment.

**A.      Standard of Review and General Principles**

13

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court must draw all reasonable inferences in the light most favorable to the non-moving party. Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016). Generally, we review a district court's grant of summary judgment de novo and apply the same legal standard as the district court. Id.; Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

The same is true where a district court adopts a magistrate judge's findings and recommendations as the district court's own ruling. In such cases, however, this Court "will generally not review a magistrate judge's findings or recommendations if a party failed to object to those recommendations below." Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1257 (11th Cir. 2017) (emphasis added). This principle was solidified in Eleventh Circuit Rule 3-1, which provides that— subject to notice regarding the timing and consequences of objections—the failure to object to specific portions of a report before the district court results in the waiver of those challenges on appeal. 11th Cir. R. 3-1. If, however, the challenging party demonstrates that the interests of justice instruct against a

14

waiver, this Court may still review the report's findings and recommendation for plain error. Id.

To establish plain error, the challenging party must show: (1) an error occurred; (2) that error was plain; (3) it affected substantial rights; and (4) it seriously affected the fairness of the judicial proceeding. See United v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776 (1993); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1329 (11th Cir. 1999) ("Plain error review is an extremely stringent form of review. Only in rare cases will a trial court be reversed for plain error.").

## B.    Properly Overruled Objections

As an initial matter, we note that, before the district court, Harrison specifically objected to only three findings in the magistrate judge's report. Consistent with the summary judgment standard, we review these challenges de novo. See Chapman, 229 F.3d at 1023. Under this standard of review, we consider whether the district court properly overruled Harrison's three objections to the report, and we conclude that it did.

Harrison's first specific objection to the report was that the magistrate judge improperly credited Assistant Director Browning's testimony that he and Shands met with personnel to ensure that the duties outlined in the 2008 Work Plan were consistent with a Superintendent's job classification. But, as the district court pointed out, the record demonstrates that Browning agreed to this fact in his

15

deposition. Harrison offered no evidence to rebut Browning's testimony, but rather Harrison challenged only whether it was sufficient to establish that the meeting occurred. The district court properly concluded that Browning's testimony was sufficient to establish this fact for purposes of summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"); Dawkins v. Fulton Cty. Gov't, 733 F.3d 1084, 1089 (11th Cir. 2013) (citing same). We agree because Browning's testimony on that point was not contradicted by any other person's testimony.

Harrison's second objection involved his own Statement of Material Facts, wherein his counsel asserted that Harrison was the only Superintendent required to work in a cubicle instead of an enclosed office. Although Harrison claimed that the magistrate judge unfairly credited Browning's testimony while scrutinizing his own, that claim has no merit. The magistrate judge accepted Browning's testimony as true for purposes of summary judgement because it was not disputed by Harrison's evidence. The magistrate judge did not accept Harrison's counsel's allegation in his Statement of Material Facts—that other Superintendents were given offices—because it was not supported by any of Harrison's record citations or by any testimony. See Fed. R. Civ. P. 56(e) (stating that, if a party fails to

16

properly support an assertion of fact, the court may consider the fact undisputed and grant summary judgment).

In his deposition, Harrison talked only about his lack of an office but did not point to any other Superintendent who had an enclosed office.  Similarly, Tilford Belle testified that Harrison "had concerns about working at a cubicle" but could not recall whether Henson worked at a cubicle.  Even viewed in a light most favorable to Harrison, neither his testimony nor that of Belle established anything about the office situation of the other Superintendents.  The district court properly determined as much and did not err in overruling Harrison's objection on this issue.

Harrison's third and final objection focused on the magistrate judge's conclusion that Fulton County provided a reasonable accommodation when, at the June 19, 2009 interactive meeting, the county assigned an additional employee to lift manhole covers for Harrison.  Harrison argued that the magistrate judge failed to consider Harrison's subsequent complaint to Fulton County that the additional employee was not able to lift the manhole covers by himself, which meant Harrison still had to help lift the manhole covers.  Thus, Harrison argued, the accommodation of an additional employee was not reasonable.

This argument misses the mark.  Fulton County's accommodation established that Harrison was not required to lift or to help lift the manhole covers,

17

and Fulton County even reiterated as much during the August 21, 2009 ADA meeting.  Specifically, Fulton County instructed Harrison to comply with his physician's orders and not to engage in any "heavy lifting."  To the extent that he complied with Fulton County's instruction, Harrison did not suffer any adverse employment action as a result of his compliance.  Indeed, in October 2009, after Harrison complained to Fulton County about the additional employee's inability to lift manhole covers, Fulton County removed Harrison from the field entirely.  The district court properly overruled Harrison's third objection to the magistrate judge's report.

## C.    Waiver and Plain Error

As to the unobjected-to portions of the report, we note that Harrison was explicitly informed of the time period for filing objections, as well as the consequences of a decision not to object to specific portions of the report.  Under this Circuit's Rule 3-1, Harrison has waived all other arguments on appeal that seek to challenge the magistrate judge's report or its findings or determinations as adopted by the district court.  Although this principle is sometimes applied less stringently to parties proceeding pro se, it is undisputed that Harrison had counsel before the district court.

Even assuming arguendo that Harrison's arguments were not waived, nowhere in his appellate briefs does he assert that, in the interests of justice, this

18

Court should assess the district court's rulings for plain error. Construed broadly, however, Harrison's reply brief on appeal does suggest that this Court should address his claims on the merits because the DOJ and EEOC determined his "rights were violated." Harrison ignores the DOJ's express disclaimer that it passed no judgment on the merits of Harrison's claims. In any event, we find no plain error with respect to the unobjected-to portions of the magistrate judge's report.

Specifically, there was no plain error in the magistrate judge's conclusion—and hence the district court's conclusion—that Harrison had failed to state a prima facie case for each of his claims. First, as to Harrison's § 1983 race-based failure-to-promote claim, the individual ultimately hired for the Sewer System Superintendent II position was also an African American. Second, as to Harrison's retaliation claim under Title VII, he established no causal connection between protected conduct and any adverse employment action. Namely, Harrison's Work Plan job assignments in 2008 predated both Harrison's and his coworker's 2009 EEOC charges. In addition, Harrison failed to show any other adverse employment action resulting from his cooperation with the 2009 EEOC charge filed by his coworker, James Marks.

Third, as to discrimination under Title VII, Harrison's work assignments were not adverse employment actions and were also assigned to his white coworker. Fourth, as to reasonable accommodations under the ADA, Fulton

19

County granted Harrison a reasonable and timely accommodation by providing him an additional employee to lift manhole covers.  This offered accommodation occurred shortly after Fulton County received documents from Harrison's physician and within two months of Harrison's first request for accommodation.

We conclude that the district court properly overruled each of Harrison's objections to the magistrate judge's report and that there was otherwise no plain error in the unobjected-to portions of the magistrate judge's report.  The district court properly granted summary judgment in favor of defendant Fulton County.

## III.    CONCLUSION

Accordingly, we affirm the district court's grant of summary judgment in favor of defendant Fulton County.

**AFFIRMED.**